IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of: <br><br> JEFFREY KARL DRIVER, <br><br>                       Petitioner. | No. 84793-7-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

Hazelrigg, A.C.J. — Jeffrey Driver filed this personal restraint petition challenging a prison disciplinary infraction that he received for possessing a broom handle that was found by the Department of Corrections hearing officer to be a "possible weapons component." He argues that his restraint is unlawful on the grounds that WAC 137-25-030(1) (Category A, 602) is unconstitutionally vague as applied here and the finding of guilt was not supported by sufficient evidence. Because the hearing officer added language not found in the WAC, *no* evidence supports the finding that Driver committed this serious infraction and, as that alone entitles Driver to relief, we grant his petition without reaching the constitutional claim.

FACTS

Jeffrey Driver is incarcerated at the Washington State Penitentiary in Walla Walla. On April 30, 2021, the emergency response team (ERT) searched the "Victor Unit" where Driver resides in response to the stabbing of a corrections officer in a different unit. ERT members Gary Bafaro and Stephen LaForce entered Driver's cell to search for weapons. In their search, ERT found a state-

owned broom handle leaning against the wall behind a cardboard shelf with a Unit shirt hanging over it. As a result, the ERT members issued an initial serious infraction report against Driver, accusing him of a 602 infraction, a serious violation for "[p]ossessing, manufacturing, or introducing any firearm, weapon, sharpened instrument, knife, or poison, or any component thereof." WAC 137-25-030(1) (Category A, 602).

On May 17, 2021, Driver attended a disciplinary hearing on the infraction. The hearings officer, identified in the record only as "G. Pierce," read Driver written statements from the ERT members that concluded he was in possession of a weapon or a component thereof, as well as three photos of the broom handle. When asked how he would plead to the 602 infraction, Driver stated he was not guilty. Driver explained to Pierce that he tied up water bags inside of the shirt and threaded the broom handle through the sleeves to construct a make-shift barbell. Driver indicated he would plead guilty to a 702 infraction because he had a state item used for cleaning in his cell without authorization; 702 is a serious violation for "[p]ossessing, manufacturing, or introducing an unauthorized tool." WAC 137-25-030(1) (Category C—Level 1, 702). Ultimately, Pierce concluded that Driver was guilty of the 602 violation: "With the written staff testimony, the inmate's statement, inmate Driver did possess a state broomstick approximately 4-5 feet in length, in his cell. This is a *possible* weapons component, as a club or spear. Guilty of 602." (Emphasis added.)

On May 21, 2021, Driver filed an administrative appeal with the Department of Corrections (DOC). On appeal, Driver asked that his infraction be reduced to a

702 infraction. Due to the finding of guilt on the 602 infraction, Driver's extended family visits (EFVs) were suspended for five years and he lost 30 days of good time credits which extended his earned release date (ERD). The DOC staff who considered Driver's appeal issued a decision that stated, "You admit to being in possession of a weapons component. The finding of guilt is upheld. The sanctions imposed are both appropriate and within established standards."

On July 28, 2021, the Office of Corrections Ombuds (OCO) received a letter from Driver in which he asked them to investigate the infraction, and to reduce it to a 702. In response, OCO sent a letter to Driver that stated that no violation of policy occurred and explained that it was not able to affect Driver's access to EFVs. The letter from OCO noted that:

> DOC is only required to have "some evidence to support the findings made in the prison disciplinary hearing." [Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985)]. Thus, unlike a criminal justice hearing where the [S]tate must prove each element of a violation, in a prison disciplinary hearing the burden is often on the incarcerated person to prove that they *didn't* commit the infraction.

On December 7, 2022, Driver timely filed this personal restraint petition (PRP) in which he raises a vagueness challenge to WAC 137-25-030(1) (Category A, 602) as applied to the facts here and contends that insufficient evidence supports the finding of guilt for this infraction.

ANALYSIS

To prevail on this PRP pursuant to RAP 16.4, Driver "must establish (1) that he is currently being restrained, and (2) that the restraint is unlawful." *In re Pers. Restraint of Malik*, 152 Wn. App. 213, 218, 215 P.3d 209 (2009). Driver is under

restraint as a result of this serious infraction because he lost 30 days of good time credits and his ERD was extended accordingly. *See In re Pers. Restraint of Krier*, 108 Wn. App. 31, 37, 29 P.3d 720 (2001) (holding petitioner under restraint based on loss of good time credits). The central issue is then whether his restraint is unlawful.

When reviewing a prison disciplinary proceeding, this court asks whether "the action taken was 'so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding.'" *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999) (quoting *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 294, 678 P.2d 323 (1984)). The answer is "yes" if either "the petitioner is not afforded the minimum due process protections applicable in prison disciplinary hearings" or "the decision is not supported by at least some evidence." *Malik*, 152 Wn. App. at 218. Minimum due process requires that the prisoner "(1) receive notice of the alleged violation; (2) be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals; and (3) receive a written statement of the evidence relied upon and the reasons for the disciplinary action." *Gronquist*, 138 Wn.2d at 396-97. Driver avers that neither minimum due process nor sufficient evidence were provided and he seeks reversal on both grounds.

I.      "Some Evidence" Standard

DOC did not have any evidence to support its finding that Driver committed serious infraction 602. While the "some evidence" standard may be modest, it is not illusory; there must be "some reasonable connection between the evidence

- 4 -

and the inmate in order to support actions taken by the prison disciplinary board."
*In re Pers. Restraint of Anderson*, 112 Wn.2d 546, 549, 772 P.2d 510 (1989).
Determining whether "some evidence" exists does not require weighing of the
evidence, examination of the entire record, or an independent assessment of the
credibility of witnesses. *In re Pers. Restraint of Johnston*, 109 Wn.2d 493, 497,
745 P.2d 864 (1987). Rather, we consider whether any evidence in the record
supports the conclusion of the disciplinary board. *Id*. According to the WAC in
effect at the time, "In reaching a decision, the hearing officer will consider only the
evidence presented at the hearing." Former WAC 137-28-310(1) (2016).
Therefore, we are "bound to review this personal restraint petition challenging the
sufficiency of such evidence *solely on the evidence in the record of that same
hearing*." *Krier*, 108 Wn. App. at 42 (emphasis added).

Driver argues that there is insufficient evidence to support the disciplinary
finding. Aside from three photographs of the broom handle, the decision rendered
by Pierce was based on two pieces of evidence: written testimony from two ERT
staff and Driver's oral testimony at the hearing. The written testimony reads:

> On 4-30-21 at 10[:]00 [a.m.] . . . LaForce and I performed a cell
> search on Victor Unit A wing cell 222. While conducting the cell
> search I found a wood broomstick hidden behind a cardboard shelf,
> and a Unit[-issued] button-up T-shirt in the common area of the cell.
> After completing the cell search there where [sic] no attachments
> found in the cell for the broomstick. For being in possession of a
> weapon or a [c]omponent thereof, offender Driver is in violation of
> WAC# 602.

and:

> On 4-30-21 at 10[:]00 [a.m.] myself and . . . Bafaro conducted a
> search on cell VA222. During the search I witnessed Bafaro find a

wooden broomstick that had been hidden behind a cardboard shelf and hanging shirt above the shelf.

The pertinent portions of Driver's testimony are as follows:

> I plead not guilty, sir. I never had any ill intentions with that broomstick. We haven't had weights for over a year, and I had a water bag I had tied up in the t-shirt, and I was using the broomstick to stick through the sleeves to improvise for a barbell, so I could do curls with my celly. . . . We had got celled-in a couple days prior to that search, or whatever, and when the [corrections officers] had come in and told us to cell-in, instead of running back down the tier and putting the broom handle back in the mop closet, I just fuckin' celled in, and I was gonna return it as soon as our cell opened, but we ended up getting a cell search before our doors ever opened again.
> . . .
> I would plead guilty to a possession of a tool, because I wasn't supposed to have the broom in there, you know, 702.[1] I have no problem pleading guilty to a 702, possession of a tool, because I shouldn't have had it in my house, you're right.
> . . .
> It wasn't altered at all. . . . The broom was not altered whatsoever, it wasn't broken.

After deliberating Pierce provided his decision: "With the written staff testimony, the inmate's statement, inmate Driver did possess a state broomstick approximately 4-5 feet in length, in his cell. This is a possible weapons component, as a club or spear. Guilty of a 602."

In both the written decision and verbal explanation to Driver, Pierce noted that the broom handle was only a "possible weapons component." Many items regularly made available by the state for incarcerated individuals to use could be

---

[1] While there is not extensive caselaw on the distinction between a serious infraction for possessing a weapon or a tool, an examination of the regulatory history of serious infractions 602 and 702 reveals that, while similar, DOC intended these two infractions to be distinct. Up until 1989, there was no separate infraction for the possession of a tool, but 602, possession of a weapon, was on the books and included an "unauthorized tool." Former WAC 137-28-030 (602) (1985). In 1989, DOC amended its regulation and 702 was created to distinguish infractions for the possession of a tool from a possession of a weapon. Former WAC 137-28-030 (702) (1989).

classified as a "possible weapons component." While there may be "some evidence" to support that conclusion, a "*possible* weapon[] component" is not punishable under 602. (Emphasis added.) Pierce's inclusion of the word "possible" in his decision essentially concedes that there was no evidence in the record to support the conclusion that Driver was in possession of an *actual* weapon component. At oral argument before this court, DOC stated that the word "possible" "means—I take it to mean at least—that this is a possible weapon as opposed to this is impossible to be used as a weapon."[2] Counsel for DOC eventually conceded at argument that even a broom with the brush attachment connected can be used as a weapon just as pencils and other seemingly innocuous items can be.[3] Under DOC's proposed test for weapons, 602 infractions would be warranted whenever an incarcerated person possesses any item, so long as it is not *impossible* to use that item as a weapon. However, a conceivable potential based on hypotheticals detached from the facts is not evidence.

Evidence that a seemingly innocuous item has been altered in such a manner that renders it more dangerous than its original state could serve as some evidence that the item is a weapon under 602. For example, Driver and DOC cite to *In re Personal Restraint of McVay*, wherein McVay raised a sufficiency challenge to a disciplinary decision that found he had committed a 602 violation. 99 Wn. App. 502, 993 P.2d 267 (1999). McVay was a member of the prison screen-printing department and a corrections officer found 19 pieces of metal stored in the

---

[2] Wash. Ct. of Appeals oral argument, *In re Pers. Restraint of Driver*, No. 84793-7-I (Apr. 23, 2024), at 15 min., 8 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2024041199/?eventID=20247041199.

[3] Wash. Ct. of Appeals oral argument, *supra*, at 15 min., 40 sec.

back of McVay's desk drawer. *Id. at* 504. Each piece measured ten inches long and one and a half inches wide. *Id*. McVay explained that the pieces were used to remove labels on the silk screen frames and that another incarcerated person had advised him that they were allowed to have the cut metal pieces for this purpose. *Id.* In considering McVay's PRP, this court determined there was sufficient evidence in the record to support the 602 infraction. *Id.* at 508.

The most important distinction between this case and *McVay* is that the metal pieces found in that case were altered in a way that clearly connected them to the text of 602, which reads: "Possessing, manufacturing, or introducing any firearm, weapon, *sharpened instrument*, knife, or poison, or any component thereof." WAC 137-25-030(1) (Category A, 602) (emphasis added). The metal pieces had been altered; they were cut, ostensibly in order to be sharp enough to scrape labels off of screens.

On the other hand, the broom handle in this case was itself not altered, despite DOC's claims to the contrary in briefing and at argument, but merely separate from a broom head.[4] As Driver stated during the hearing, the broom handle was not broken or altered in any way that would render it any more dangerous than its factory state or its authorized use for cleaning inside the prison.

---

[4] DOC's response brief refers to the broom handle as "altered" six times on pages 3, 15, 18, 19, 21, and 29. However, this contention is not supported elsewhere in the record. These claims largely rely on the January 18, 2024 declaration from LaForce for support. Having been prepared nearly three years after the incident date and submitted for the first time on appeal, it was clearly not before the hearing officer during the disciplinary hearing and therefore is not to be considered at this stage.

At argument, counsel for DOC suggested that because Driver used the handle as a barbell, it had been altered. The panel asked, "Isn't that using it for something verses actually altering the item? Isn't that different?" Counsel replied, "It would be—I think—it is." Wash. Ct. of Appeals oral argument, *supra*, at 9 min., 57 sec.

There is a major distinction between a state-sanctioned item that has been *altered* in order to render it more dangerous and one that has merely been *disassembled*. At argument, DOC averred, "We know it's been altered . . . because we know it's no longer useful as a broom."[5]  This statement is false.  There is no evidence in the record to support that the detached broom handle could not be easily reattached to a brush.  Further, there is no evidence that Driver even removed the broom attachment himself; there is no evidence in the record as to how these cleaning tools are normally stored in the unit's communal closet.

Testimony from Driver at the hearing is evidence that the broom handle was actually being used as a tool.  Driver explained that he and his cellmate used the handle as a barbell by tying bags of water inside of the shirt that was found hanging over the handle by ERT members.  Pierce made no finding discrediting any of Driver's testimony at the disciplinary hearing.  While all of this evidence may constitute "some evidence" that Driver was in possession of a tool,[6] none of it goes to show that he was guilty of possessing a weapon.  There is no evidence that the broom handle had been altered to constitute a weapon component like the long metal pieces that were cut in *McVay*, thus that opinion does not control here.

_____

[5] Wash. Ct. of Appeals oral argument, *supra*, at 12 min., 49 sec.

[6] Driver consistently offered to plead guilty to committing an infraction under 702, a less severe infraction category, for unauthorized possession of a "tool."  DOC never accepted Driver's offer, never served notice of an alleged 702 infraction, and never maintained that the infraction could be upheld or that DOC could still proceed on that basis at this point.

While we believe it is clear that when we grant relief on a PRP arising from a prison disciplinary action and the only infraction charged is reversed, that necessarily entails dismissal of the entirety of the infraction with prejudice, in an abundance of caution we note that DOC has clearly waived any claim to pursue a 702 infraction stemming from this incident.

Moreover, DOC asserted at oral argument that the broom handle was not a tool because the broom head was not attached.  Wash. Ct. of appeals oral argument, *supra,* at 8 min., 28 sec. It obviously would now be inconsistent with DOC's representation to the court to claim that Driver possessed a tool after all.

Therefore, we conclude that there was no evidence in the record to support Pierce's finding that Driver was guilty of serious infraction 602 and, thus, this action was arbitrary and capricious. Accordingly, we grant Driver's personal restraint petition, vacate the serious infraction ruling entered on May 17, 2021, and remand to DOC to strike the infraction and restore Driver's good time credits, ERT, and EFVs.

## II. Attorney Fees

Though no such request was presented in Driver's PRP, the parties were asked at oral argument whether this court has authority to award attorney fees[7] in PRPs and they were later directed to submit supplemental briefs on this question. The parties appear to agree that under the RAPs, the prevailing party may be awarded fees, though DOC argues such an award would be limited to $200 pursuant to RCW 4.84.080 and, alternately, considered the ability of a trial court to award fees based on opposing a frivolous action. Driver analyzed the question under RAP 18.9 based on the pursuit of a "frivolous *defense*," without discussion of a limit on the amount of the award.

DOC concludes its supplemental brief by asserting that this court may not award fees based on "a new, fact-dependent theory of recovery that had not previously been briefed on appeal." This contention is not well taken given that Driver has consistently averred that DOC applied a standard beyond the scope of the plain language of the WAC. Far from a new theory, the briefs of both parties demonstrate that this has *always* been at the core of Driver's challenge. Both

---

[7] Wash. Ct. of appeals oral argument, *supra,* at 17 min., 24 sec.

counsel for Driver and the DOC extensively addressed the concept of "potential weapons component" vis a vis the plain language of 602, as did Driver himself in his pro se initial petition. DOC has had ample notice of and opportunity to respond to the theory that the infraction finding is predicated on the arbitrary inclusion of language not found in the WAC.

More critically, though, Driver noted in his supplemental brief on the question of fees that an award in this case would likely be an issue of first impression and potentially prolong litigation that has already persisted for nearly three years. Counsel for Driver then explicitly highlighted what was clearly one of the primary motivating factors for his persistence in his dogged pursuit of review in this case: restoration of his EFVs with his son. The record is replete with references to Driver's offer to resolve this matter by pleading to a lesser 702 infraction and specifically to his desire to restore EFVs with his son. As he has already been deprived of those visits without lawful basis since May 17, 2021, we decline to award fees.

WE CONCUR:

- 11 -